UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| **LINDA ELMORE**, Surviving Spouse of Detainee Marvin Elmore, | ) ) ) |
| PLAINTIFF, | ) ) |
| Vs. | ) ) |
| **Maries County Commission:** | ) ) |
| **VICTOR STRATMAN,** Presiding Commissioner | ) ) ) |
| **ED FAGRE**, Western District Commissioner, | ) ) ) |
| **DOUG DREWEL**, Eastern District Commissioner | ) ) ) |
| | ) CAUSE NO. _____ |
| **CHRIS HEITMAN,** Maries County Sheriff | ) ) ) |
| **SCOTT JOHNSON,** Jail Administrator | ) ) |
| **ALLYSON RACKER**, Jailer, | ) ) |
| **SHANE SWENO**, IT Personnel, | ) ) |
| DEFENDANTS. | ) |

## COMPLAINT

**COMES NOW** Plaintiff, Linda Elmore, by and through her attorney of record, James L. Thomas, and files this civil action against Defendants in their individual and official capacities, and would show:

### References

Maries County Sheriff's Department shall hereinafter be referred to as "MCSD"

Marvin Elmore, Detainee, shall hereinafter be referred to as "Mr. Elmore"

1

Maries County Commission shall hereinafter be referred to as "MCC"

Chris Heitman, Sheriff of Maries County, shall hereinafter be referred to as "Sheriff"

Scott Johnson shall hereinafter be referred to as "Deputy Johnson"

Allyson Racker shall hereinafter be referred to as "Jailer"

Shane Sweno shall hereinafter be referred to as "IT Personnel"

Plaintiff, Linda Elmore shall hereinafter be referred to as "Ms. Elmore"

## INTRODUCTION

1. Plaintiff, Linda Elmore, on behalf of all class beneficiaries of Marvin Elmore (deceased) seeks judgment against Defendants for violations of Marvin Elmore's well established civil rights under the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. §§ 1983, 1985, and 1988; the Missouri Constitution; and Missouri's false imprisonment, negligence, and wrongful death statutes, while acting under the color of law.

2. Plaintiff, Ms. Elmore also seeks judgment against Defendants for implicitly or explicitly adopting and implementing policies and/or customs that included, among other things, allowing officers and jailers with no or inadequate training to assess the medical conditions of arrestees/detainees/inmates, withhold or deny medical treatment to arrestees/detainees/inmates with serious medical needs, use unnecessary force or arrestees/detainees/inmates and failed to prevent or stop other jailers or officers from violating the civil rights of arrestees/detainees/inmates. These policies, customs, or practices and/or failure to have the same reflected a deliberate indifference to Mr. Elmore's constitutional rights and ultimately led to his in-custody death on September 8, 2020.

## JURISDICTION AND VENUE

3. This action is brought, in part, pursuant to 42 U.S.C. §§ 1983, 1985, and 1988 for the deprivation of civil rights; jurisdiction is therefore appropriate under 28 U.S.C. §§ 1331 and

1343. This Court also has jurisdiction pursuant to 42 U.S.C. § 1988 to award and allocate attorneys' fees which are specifically requested in this Complaint.

4. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. The claims asserted herein arose in Maries County, Missouri, which is located in the Eastern District, Southeastern Division of this Court and, therefore, venue is proper under 28 U.S.C. § 1391(b) and (e) and E.D.Mo.L.R.. 3-2.07(B)(2).

## PARTIES

6. Plaintiff, Ms. Elmore is and, was at all times relevant, the wife of the decedent Mr. Elmore (DOB: 04/03/1960).

7. Plaintiff Ms. Elmore is an appropriate party to bring this action on behalf of all members of the class for wrongful death pursuant to R.S.Mo. § 537.080, as she is the wife of decedent.

8. Defendant Maries County, Missouri ("Maries County") is a political subdivision of the State of Missouri and operates the Maries County Sheriff's Department ("MCSD"), a jail located in Maries County, Missouri.

9. Defendant Maries County has control of the budget and authorization for deputies and jailers of the MCSD, who in turn control and operate the MCSD.

10. Defendant Maries County is responsible for the wrongful death of Mr. Elmore, which was caused by the acts and/or failures to act of the duly appointed sheriff, deputies, jailers, and staff of the MCSD, who were acting under color of the law at the time, as well as the negligent acts and/or omissions of each and every other Defendant, who were employees and/or agents of Maries County, and were acting within their scope of employment.

11. At all times material hereto, Chris Heitman ("Sheriff") was a citizen and resident of Maries County, Missouri, and was acting in his capacity as the elected Sheriff of Maries County,

employed by Defendant Maries County, and was acting under the color of law. The Sheriff is sued in both his individual and official capacities. As Sheriff, he was the policymaker with respect to operations, general orders, and treatment of arrestees/inmates/detainees, and responsible for the daily operations of the MCSD and formed and adopted its customs.

12. At all times material hereto, Defendant SCOTT JOHNSON ("Deputy Johnson") was a citizen and resident of Maries County, Missouri, and was acting in his capacity as Jail Administrator of MCSD, employed by Defendant Maries County, and was acting under color of state law. He is sued in both his individual and official capacities. As Jail Administrator, Deputy Johnson was the policymaker with respect to operations, general orders, and treatment of arrestees/inmates/detainees, and responsible for the daily operations of the MCSD and formed and adopted its customs.

13. At all times material hereto, Defendant ALLYSON RACKER ("Jailer") was a citizen and resident of Maries County, Missouri, and was acting in her capacity as Maries County Jailer and employed by Defendant Maries County, and was acting under the color of law. She is sued in both her individual and official capacities.

14. At all times material hereto, Defendant SHANE SWENO ("IT Personnel") was a citizen and resident of Maries County, Missouri, and was acting in his capacity as Maries County IT Personnel, employed by Defendant Maries County, and was acting under the color of law. He is sued in both his individual and official capacities.

15. At all times material herein, County Defendants were employed and/or acted as agents of Defendant Maries County and acting under the color of law.

16. Defendant, Maries County, established and/or delegated to Defendants and/or other employees the responsibility of establishing and implementing policies and customs of the MCSD regarding medical care, medical screenings, safety screenings, medical monitoring, and basic care of each arrestee/detainee/inmate; and for implementing policies and customs for training other

4

jailers and employees on the same. We must implement a mandate that all officers intervene to stop and report medical issues. Failure to intervene or report should be considered an act of complicity.

17. Defendant, Maries County, established and/or delegated to Defendants and/or other employees the responsibility of establishing and implementing policies and customs regarding the use of force, medical care, medical screenings, safety screenings, medical monitoring, and basic care of each arrestee/detainee/inmate; and for implementing policies and customs for training other officers on the same.

18. All acts and/or omissions which caused injury to and the death, or the contribution of death, of Mr. Elmore occurred while he was in the custody of MCSD, located in Maries County, Missouri.

19. All acts and/or omissions which caused injury and/or contributed to the death of Mr. Elmore, occurred while he was in the custody of MCSD, in Maries County, Missouri.

20. Each of the acts and/or omissions complained of herein which caused injury and/or contributed to the death of Mr. Elmore occurred between January 25, 2020 and September 8, 2020, the date of his death, while he was in the care, custody and control of MCSD in Maries County, Missouri.

**FACTS**

21. On or about January 29, 2020, Mr. Elmore, was arrested and detained by the MCSD, in Maries County, Missouri. Mr. Elmore, at the time of his arrest, was interviewed by members of the MCSD and Mr. Elmore stopped the interview and informed the MCSD of his need for medication.

22. That, at the time of interview with Mr. Elmore on January 29, 2020, Mr. Elmore was incoherent and unable to properly respond to the MCSD deputies and/or employees questioning him. As a result thereof, the interview was terminated and Mr. Elmore was transported

to Phelps Health Hospital in Rolla, Phelps County, Missouri.² Upon Mr. Elmore's arrival at the hospital, his glucose reading was in excess of 500 (which normal is between 70-100).  It should be noted that Mr. Elmore is a Type II diabetic.  See **Plaintiff's Exhibit 2** attached hereto.  Mr. Elmore was instructed upon release from Phelps Health Hospital to "continue taking your regular medications as directed.  Eat small meals.  Monitor your blood sugars closely. Return to the ER for any worsening of symptoms."

23. Mr. Elmore was released from Phelps Health Hospital to the custody of the MCSD.

24. That Defendants failed to properly monitor Mr. Elmore's glucose readings, or even take readings to establish the level of his glucose and failed to medicate Mr. Elmore as directed by the physician of Phelps Health Hospital.

25. That Defendants failed to provide Mr. Elmore with smaller meals, for specific periods of time, as directed by the physicians of Phelps Health Hospital, and failed to return Mr. Elmore to the ER when his condition and symptoms worsened.

26. That Mr. Elmore also has a history of seizures.

27. That Defendants had a policy wherein they recruit or encourage other inmates to assault certain inmates within their facility.  Mr. Elmore was one of the inmates targeted by Defendants.

28. That on or about March 10, 2020, Mr. Elmore was assaulted by an inmate, awhile in custody of the MCSD, and received substantial head injuries.  MCSD provided for transport of Mr. Elmore to Phelps Health Hospital regarding this incident.

29. That as a result of the assault, Mr. Elmore was diagnosed with syncopal episodes (fainting or passing out).  These episodes are typically triggered by a sudden, temporary drop in blood flow to the brain, which leads to loss of consciousness and muscle control. Mr. Elmore was also diagnosed with closed head injury, multiple contusions, chest wall contusions, and multiple lacerations, all of which are inconsistent with a fall in a shower as alleged by the MCSD.

30. That during Mr. Elmore's jail stay, his health deteriorated and diminished while in custody of the MCSD.

31. Starting on or about September 1, 2020, Mr. Elmore could no longer speak or properly carryon an intelligent conversation while incarcerated.

32. Mr. Elmore had either a seizure or passed out on the floor. The inmates were able to get the attention of the MCSD, Deputy Johnson, who came into the cell of Mr. Elmore and stated "we dealt with him [Marvin Elmore] before. We know he's faking it." Deputy Johnson proceeded to kick Marvin Elmore three times and Marvin Elmore remained nonresponsive. Deputy Johnson then stated "I'm not going to waste my jailer's time with you [Marvin Elmore] and I'm not going to stand for it". . . "quit yelling for deputies – we got work to do and we're too busy for your shenanigans." Shane Sweno, Maries County IT personnel, while at the Maries County dispatcher's office, checked Marvin Elmore's blood sugar and stated "it's high". . . "he's not getting out of here" . . . "he's not getting a free ride" . . . "he doesn't matter he's an old meth head anyway" to deputies and dispatch.

33. Defendant Sweno, as part of the cover up, failed to preserve the video images of the assault and Defendant lying on the bathroom floor. There are no videos of any "alleged" falls or inmate or police brutality.

34. Mr. Marvin Elmore fell out of his cot in jail and was nonresponsive and remained on the floor until the following day. Proper monitoring would have shown Mr. Elmore falling from his cot, laying on the ground unresponsive for an extended period of time, and the need for medical intervention.

35. Mr. Elmore would have episodes of passing out, slobbering on himself, defecating and urinating in his clothing. During these episodes and, at one particular time, an inmate at the MCSD Jail, pulled Mr. Elmore to the shower, as he was nonresponsive and unable to speak or walk. This inmate removed Mr. Elmore's clothing and then proceeded to bathe him. The inmate

left Mr. Elmore in the shower facedown. Several inmates tried to get the attention of the Jailer by yelling and putting signs up to the video monitor that Mr. Elmore needed help. The MCSD sometimes responded to the inmates' requests and sometimes ignored them. On this date, September 8, 2020, the MCSD finally had Mr. Elmore transported to Phelps Health Hospital. Phelps Health Hospital then air-lifted Mr. Elmore from their facility to St. Luke Hospital in St. Louis, Missouri on the same day where he subsequently died.

36. At all relevant times, Mr. Elmore suffered from an objectively serious medical need that was so obvious that even a layperson would easily recognize the necessity for medical attention.

37. Defendants were aware that Mr. Elmore had an objectively serious medical need as it was obvious based on his physical condition, both past and present, from information provided by Mr. Elmore himself, and Phelps Health Hospital, about his medical condition, care and needs while incarcerated.

38. The MCSD knew of the need for medical attention yet disregarded the same.

39. Defendants individually and in concert with one another intentionally, willfully, maliciously and/or recklessly, and while acting under the color of state law, showed a deliberate indifference to Mr. Elmore's serious needs, including medical needs and intervention, in that they had actual knowledge of his severe medical condition and did not provide any and/or sufficient medical treatment or contact anyone who could provide proper and/or adequate medical treatment.

40. Defendants individually and in concert with one another intentionally, willfully, maliciously and/or recklessly, and while acting under the color of state law, showed a deliberate indifference to Mr. Elmore's constitutional rights in that they deprived him of medical treatment, knowing his history and medical condition while incarcerated with the MCSD.

41. Defendants individually and in concert with one another through the policies and customs instituted by them fostered an environment which led to the deliberate indifference of

8

Mr. Elmore's serious needs in contravention of his civil rights.

42. Defendant MCSD was negligent in their supervision and training of the County deputies and personnel.

43. Each of the Defendants, individually and in concert with one another, acted under the color of state law in both his/her individual and official capacities to deprive Mr. Elmore of his right to adequate and/or proper care, including medical health care. This is a right secured to Mr. Elmore by the 4th, 8th and 14th Amendments of the U.S. Constitution and by 42 U.S.C §1983.

44. Defendant, MCSD has a custom and policy of failing to provide adequate medical care.

45. This custom and policy was the moving force behind the violation of Mr. Elmore's constitutional rights and subsequent death.

46. Defendant MCSD has a custom and policy of failing to provide adequate medical care.

47. Defendant, MCSD failed to implement adequate policies and/or customs to address arrestee/detainee/inmate medical concerns, medical surveillance, and detection of serious medical conditions.

48. Defendant MCSD failed to implement adequate policies and/or customs to address arrestee/detainee/inmate medical concerns, medical surveillance, and detection of serious medical conditions.

49. As a direct and proximate result of the intentional and/or negligent, and/or grossly negligent, and/or reckless acts of all Defendants, Plaintiff and all the wrongful death beneficiaries suffered the loss of Mr. Elmore.

50. As a direct and proximate result of the intentional and/or negligent, and/or grossly negligent, and/or reckless acts of all Defendants, Mr. Elmore suffered conscious pain and suffering

before his death, including but not limited to a deterioration of his condition, severe anxiety and distress, severe mental anguish, and all said conditions led to high levels of anxiety and anguish, and these conditions caused him great physical pain and mental suffering prior to his death. Defendants' deliberate indifference to the serious medical needs caused Mr. Elmore's condition to worsen and exacerbated his condition, causing him great physical pain and mental anguish, and subsequent death.

51. As a direct and proximate result of the actions of all Defendants described above and pursuant to Mo. Rev. Stat. 537.090, Plaintiff has been damaged as follows: damages that decedent Mr. Elmore suffered between the time of his detention to the time of his death, and for the recovery of which the decedent might have maintained an action had death not ensued; pecuniary loss suffered by reason of the death of Mr. Elmore; funeral expenses; and a reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and the support of which Plaintiff and the other class beneficiaries have been deprived by reason of the death of Mr. Elmore.

52. As a direct and proximate result of the Defendants' deliberate indifference to decedent Mr. Elmore's serious medical needs, the decedent suffered the loss of life, and with it the loss of future income and enjoyment of life.

53. Upon information and belief, Defendant MCSD, appointed and/or commissioned officers, who were not a licensed and/or adequate trained medical professional, to screen the needs, including medical needs of arrestees and detainees in custody of MCSD.

54. The video tape of the use of force was not preserved by the MCSD, although timely requested to do so by Plaintiff's counsel. Such failure to preserve was intentionally and deliberately done to coverup the illegal acts of the MCSD and the injuries sustained by Mr. Elmore. The MCSD had in existence on the date of injury to Mr. Elmore such video technology, but failed and refused to preserve the same, which is outrageous in nature.

10

55. The video tapes of the alleged fall of Mr. Elmore in the shower by the MCSD, and Mr. Elmore's subsequent injuries, were not preserved by the MCSD, although timely requested to do so by Plaintiff's counsel. Such failure to preserve was intentionally and deliberately done to coverup the illegal acts of the MCSD and the injuries sustained by Mr. Elmore. The MCSD had in existence on the date of injury to Mr. Elmore such video technology, but failed and refused to preserve the same, which is outrageous in nature.

56. The video tape of Mr. Elmore lying unconscious in the shower was not preserved by the MCSD, although timely requested to do so by Plaintiff's counsel. Such failure to preserve was intentionally and deliberately done to coverup the illegal acts of the MCSD and the injuries sustained by Mr. Elmore. The MCSD had in existence on the date of injury to Mr. Elmore such video technology, but failed and refused to preserve the same, which is outrageous in nature.

57. The video tape of Mr. Elmore laying on the floor unconscious by his cot all day and night was not preserved by the MCSD, although timely requested to do so by Plaintiff's counsel. Such failure to preserve was intentionally and deliberately done to coverup the illegal acts of the MCSD and the injuries sustained by Mr. Elmore. The MCSD had in existence on the date of injury to Mr. Elmore such video technology, but failed and refused to preserve the same, which is outrageous in nature.

58. All of the aforementioned actions demonstrate that Defendants' actions were reckless and/or callously indifferent to Mr. Elmore's rights so as to justify consideration by the trier of fact of aggravating circumstances in determining the amount of damages to be allowed.

59. Since 2010, there have been, at least, three other occasions in which it was alleged that Defendant, MCSD failed to provide medical care or use of excessive force on an inmate.

60. It is well established that malicious and sadistic use of force by a jail official or officer and against a detainee, done with the intent to injury and causing actual injury, is enough to establish a violation of the Eighth Amendment's cruel and unusual punishment.

61. Beneficiaries are entitled to compensation for violations of Mr. Elmore's constitutional rights that all Defendants inflicted upon him, including but not limited to all damages allowable for wrongful death pursuant to R.S.Mo. § 537.080; pain and suffering before death; attorneys' fees; and punitive damages.

62. Defendants' actions were wanton, malicious, sadistic, and oppressive and done with a high probability of injury and with reckless indifference to the rights of Mr. Elmore and Plaintiff, thus entitling Plaintiff to an award of aggravating circumstances.

## CAUSES OF ACTION

### COUNT 1:
### Violation of Civil Rights Pursuant to Title 42 U.S.C. § 1983 – County Defendants

63. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 62 hereinabove as thought fully set forth herein.

64. Mr. Elmore had objectively serious medical needs from the time of his incarceration in the MCSD Jail.

65. Mr. Elmore's medical need was so obvious that even a layperson would easily recognize the need for medical attention.

66. Mr. Elmore's serious medical need was apparent by his actions outlined above and by the fact that Defendants had his medical history, not only from Mr. Elmore himself, but the Phelps Health Hospital, and numerous inmates.

67. A reasonable officer would have understood that failing to seek medical care for one who exhibited the signs of Mr. Elmore would violate his constitutional rights.

68. Defendants deliberately and/or recklessly disregarded Mr. Elmore's objectively serious medical needs.

69. Given Mr. Elmore's condition, a reasonable officer in the MCSD's position

would have understood that failing to get him medical care violated his constitutional right.

70. Defendants assisted County Defendants in deliberately disregarding Mr. Elmore's objectively serious medical needs by refusing to initiate life saving measures.

71. Mr. Elmore had a clearly established Eighth Amendment right to be protected from the unnecessary and wanton infliction of pain by Defendants.

72. Defendants failed to intervene to prevent Mr. Elmore's medical condition when they had the opportunity to do so, in violation of the U.S. Constitution.

73. Defendants instead of providing medical care and/or treatment for Mr. Elmore, viewed his medical condition as "faking it . . . not going to waste time on him . . . not standing for it."

74. County Defendants violated MCSD policy and procedure access to medical care.

75. These policies were ministerial in nature.

**WHEREFORE**, Plaintiff prays this Court enter Judgment in favor of Plaintiff and against the Defendants, each of them jointly and severally for compensatory damages, damages for aggravating circumstances; punitive damages in an amount of not less than Twenty Million Dollars ($20,000,000.00); award Plaintiff reasonable attorney fees and costs pursuant to 42 U.S.C. § 988 and any other applicable provision of law; and allow such other relief as the Court deems just and proper.

## COUNT II
### Wrongful Death

76. Plaintiff incorporates by reference the allegations made in paragraphs 1 through 75 of Count I, and paragraphs as though fully set forth herein.

77. Defendants owed a duty to ensure the safety of arrestees, inmates, and detainees of the MCSD, specifically Mr. Elmore. This duty included the duty to provide adequate medical care.

78. Defendants breached their duty of care in failing to provide adequate medical care; in failing to properly assess and examine Mr. Elmore; in failing to properly monitor Mr. Elmore and using excessive force against Mr. Elmore.

79. Defendants acted in bad faith or with malice, including acting with reckless indifference to the rights of Mr. Elmore, when Defendants did the following:

    a. Failed to provide proper medical care and treatment;

    b. Failed to timely provide medical care and treatment;

    c. Used excessive force including, punching, kicking, kneeing, grabbing, slapping, dogpiling, and hitting Mr. Elmore on repeated occasions while he was incarcerated at MCSD.

    d. Refusing to administer life-saving treatment after Mr. Elmore's body went limp; and

    e. Other acts which are not now known but which will be discovered during the litigation.

80. All of these acts led to or contributed to the death of Mr. Elmore.

81. Further, Defendants caused Mr. Elmore to suffer conscious pain, suffering, and loss of life.

82. That by reason of the foregoing premises, Plaintiff is entitled to recover fair and reasonable damages against the Defendants, and each of them, as provided for in § 537.080 R.S.Mo, for the wrongful injuries to and the wrongful death of Mr. Elmore, including special damages for his funeral and burial.

83. From the beginning of his incarceration with Defendants described hereinabove until his untimely death, Mr. Elmore suffered physical and mental pain which is an item of damage to be considered and awarded.

84. Defendants' actions were wanton, malicious, sadistic, and oppressive and done with

14

a high probability of injury and with reckless indifference to the rights of Mr. Elmore and Plaintiff, thus entitling Plaintiff to an award of aggravating circumstances.

85. As a direct and proximate result of the forementioned malicious, brutal and outrageous conduct of Defendants, Mr. Elmore died and Plaintiff has been deprived of the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of Mr. Elmore by reason of such death, further including past and future loss income, household services, and the value of benefits which would have been provided by Mr. Elmore. As further direct and proximate result of the acts of omissions of Defendants, Plaintiff has incurred pecuniary damages, including funeral expenses.

**WHEREFORE,** Plaintiff prays this Court enter judgment in favor of Plaintiff and against Defendants, and each of them jointly and severally, for reasonable compensatory damages, damages for aggravating circumstances and punitive damages in an amount of not less than Twenty Million Dollars ($20,000,000.00); award Plaintiff reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and allow such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all of the above issues, costs herein incurred, fees where appropriate, and for such other relief as is deemed appropriate by the Court.

Respectfully submitted,

James L. Thomas, Mo. Bar #24986
Attorney at Law
Post Office Box 261
Dixon, MO  65459
Telephone:  (573) 433-4564
Email:  jimthomasattorney@gmail.com

**ATTORNEY FOR PLAINTIFF**