# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| LINDA ELMORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:22-CV-00617-JAR |
| | ) | |
| MARIES COUNTY, MISSOURI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' motion to disqualify Plaintiff's counsel due to an unwaivable conflict of interest. After a hearing, and for the following reasons, the motion will be granted.

## BACKGROUND

Plaintiff Linda Elmore brought this civil rights action against Maries County and certain corrections officers at the county jail after her husband, Marvin Elmore, who suffered from type II diabetes, died in their custody. In her complaint, Plaintiff alleges that Defendants had a custom and policy of failing to provide adequate medical care to inmates. Plaintiff further alleges that Defendants had a custom and practice of recruiting or encouraging inmates to assault other inmates. In March 2020, Elmore sustained severe head injuries after he was assaulted by another inmate. On September 1, 2020, Elmore had a seizure in his cell and lost consciousness. Defendants allegedly disregarded the gravity of his condition until September 8, 2020, when he was transported to a local hospital and air-lifted to St. Louis, where he died that day.

During discovery, Plaintiff's counsel, James Thomas, alleged that he encountered several discrepancies and impediments prompting suspicions of a cover-up. To wit, Defendants originally

claimed that Mr. Elmore fell in the shower before later admitting that he had been beaten. Video footage of the assault was corrupted and required excessive delay and expense to access and produce. Defendants first identified Alyxander Rutledge as the perpetrator but finally conceded in early 2023 that it was Shay Vinson, who allegedly was disciplined right after the incident. Given these inconsistencies, Thomas asked the Maries County prosecutor to investigate the individual Defendants for orchestrating the attack on Elmore.

In June 2023, Thomas advised Defendants' counsel that Vinson had retained him in connection with any criminal liability arising from the assault[1] and directed counsel not to communicate with Vinson. (Doc. 57-2). A week later, Thomas sent a proposed proffer agreement to the prosecutor offering Vinson's testimony against the individual Defendants. (Doc. 57-3). Defendants then filed the present motion to disqualify Thomas due to an unwaivable conflict of interest arising from his representation of both Plaintiff and her deceased husband's assailant. In response to the motion, Thomas submitted conflict waivers executed by Plaintiff and Vinson and concurrently moved to withdraw from his representation of Vinson, though Vinson is not currently a party to this case or any other in this district.

On July 6, 2023, the Court held a hearing on Defendant's motion to disqualify Thomas. Defendants appeared by counsel. Plaintiff appeared in person with Thomas. In support of the motion, Defendants argued that Thomas must be disqualified due to an unwaivable conflict of interest created by his representation of both Plaintiff and a key witness in the case. Concerned that Thomas's response might reveal confidential communications or trial strategy, the Court dismissed Defendants and members of the public from the courtroom before hearing from Thomas. In closed proceedings, Thomas argued for sanctions against Defendants for discovery

---

[1] Missouri CaseNet reveals no pending charges against Vinson for the attack on Mr. Elmore.

violations, which, the Court explained, is a separate issue for another day. When pressed about his conflict of interest, Thomas continued to focus on Defendants' apparent concealment of Vinson's identity and refusal to produce his disciplinary records from March 2020. Thomas eventually conceded that a conflict existed during the short time of his representation of Vinson but suggested that he could continue to represent Plaintiff in this case except with respect to discovery or trial on matters involving Vinson. The Court took the motion under submission in order to issue this memorandum.

## DISCUSSION

The decision to grant or deny a motion to disqualify an attorney rests in the discretion of the district court. *Kitchin v. Bridgeton Landfill, LLC*, 2022 WL 4534428, at *2 (E.D. Mo. Sept. 28, 2022) (citing *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1154 (8th Cir. 1999)). While district courts are generally encouraged to strictly enforce the Code of Professional Responsibility, motions to disqualify are "subjected to particular scrutiny" because of the potential for abuse by opposing counsel. *Id*. (citing *Macheca Transp. Co. v. Philadelphia Indem. Ins. Co.,* 463 F.3d 827, 833 (8th Cir. 2006)). The party moving for disqualification bears the burden of showing that continuing representation would be impermissible. *Id*. (citing *A.J. by L.B. v. Kierst,* 56 F.3d 849, 859 (8th Cir. 1995)). However, because courts also have the duty to maintain public confidence in the legal profession and to ensure the integrity of judicial proceedings, any legitimate doubts must be resolved in favor of disqualification. *Id*.

This Court has adopted the Missouri Supreme Court's Rules of Professional Conduct. See E.D. Mo. L.R. 12.02. As relevant here, Missouri Supreme Court Rule 4-1.7 states:

> (a) Except as provided in Rule 4-1.7(b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

>> (1) the representation of one client will be directly adverse to another client; or
>
>> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under Rule 4-1.7(a), a lawyer may represent a client if:
>
>> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
>> (2) the representation is not prohibited by law;
>
>> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
>> (4) each affected client gives informed consent, confirmed in writing.

Under Rule 4-1.7, the interests of a victim and defendant are necessarily adverse and unwaivable. *State ex rel. Horn v. Ray*, 325 S.W.3d 500, 506 (Mo. App. E.D. 2010) (where counsel represented a victim of domestic violence and her husband/assailant charged with domestic assault, prohibiting counsel from representing either party). Even when clients' interests are not directly adverse, the representation of one may materially compromise counsel's responsibilities to the other. *Id*. (citing Rule 4-1.7 comment 8). Loyalty and independent judgment are essential elements in the lawyer's relationship to a client. *Id*. at 507 (citing Rule 4–1.7 comment 1). Where counsel's representation of one client would be "inescapably adverse" to the other, counsel cannot possibly fulfill his duties of undivided loyalty, zealous advocacy, and independent judgment to each client. *Id*.

Applying Rule 4-1.7 and the foregoing principles to the present facts, the Court readily finds that Thomas created an unwaivable conflict of interest by attempting to represent both Plaintiff and her husband's assailant, who is a key witness and potential defendant in this wrongful death case. Stated plainly, Thomas attempted to represent both the victim and the

perpetrator. The Court can hardly fathom a clearer conflict. Plaintiff's and Vinson's interests are "inescapably adverse."

Thomas's own statements to the Court, emphasizing his access to information from Vinson for purposes of this case, underscore the breakdown of loyalty and independent judgment inherent in his representation of Vinson in particular. It was clear to the Court at the motion hearing that Thomas failed to understand the serious and irreparable nature of the problem. "Representation of clients whose interests are directly adverse in the same litigation constitutes the 'most egregious conflict of interest.'" *Id*. at 509 (citation omitted). Consequently, the Court is compelled to disqualify Thomas from representing Plaintiff or any other party involved in this case.

Accordingly, and for good cause shown,

**IT IS HEREBY ORDERED** that Defendants' motion to disqualify Plaintiff's counsel is **GRANTED**. (Doc. 57). The Clerk of the Court is directed to remove attorney James Thomas as counsel of record for Plaintiff. Mr. Thomas is directed to provide a copy of this Order to Plaintiff.

**IT IS FURTHER ORDERED** that Mr. Thomas's motion to withdraw as counsel for Shay Vinson is **DENIED** as moot, as Mr. Vinson is not a party in any case in this district.

**IT IS FURTHER ORDERED** that Plaintiff shall have **30 days** to obtain new counsel.

**IT IS FURTHER ORDERED** Plaintiff's expert witness deadlines (Doc. 46) shall be stayed pending new counsel's entry of appearance.

**IT IS FINALLY ORDERED** that, upon new counsel's entry of appearance, the Court's stay on Defendants' production of documents (Doc. 68) shall be lifted, and Defendants shall immediately produce the subject documents to Plaintiff.

Dated this 7th day of July, 2023.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE